UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY D. BARKSDALE,

                Plaintiff,                Case No. 06-10152

                                    DISTRICT JUDGE SEAN F. COX
                                    MAGISTRATE JUDGE  STEVEN D. PEPE

vs.

JO ANNE BARNHART
COMMISSIONER OF SOCIAL SECURITY,

                Defendant

_____/

## REPORT AND RECOMMENDATION

### I.      BACKGROUND

Nancy Barksdale brought this action under 42 U.S.C. § 405(g) to challenge a final decision of the Commissioner denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  On March 17, 2006, Plaintiff filed her motion and brief for remand pursuant to sentence four.  Defendant filed its motion for summary judgement on June 8, 2006.  Both motions have been referred pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C). For the following reasons, It Is Recommended that this case be REMANDED for further administrative proceedings consistent with this Report and Recommendation.

### A.      Procedural History

Plaintiff applied for DIB on April 4, 2003 (R. 50-52), alleging that she became disabled

January 4, 2002, as a result of breast cancer with lymphedema, diabetes with diabetic

retinopathy, thyroid disorder, bilateral carpal tunnel, "bleeding in eyes" and depression (R. 78).

After Plaintiff's claim was initially denied (R. 32-38), a hearing was held on May 17, 2004,

before Administrative Law Judge Larry Temin (ALJ) (R. 452-500).  Plaintiff was represented by

her attorney, Elizabeth Eddins, and Vocational Expert Stephanie Leech (VE) also testified (R.

492-500).

      In a January 19, 2005, decision ALJ Temin concluded that Plaintiff was not under a

disability as defined by the Act because she remained capable of performing a significant

number of jobs in the economy (R. 14-25).  On November 9, 2005, the Appeals Council denied

Plaintiff's request for review (R. 5-7).

**B.**    **Background Facts**

    **1.**    ***Hearing Testimony and Statements***

      Plaintiff was born November 25, 1959, and was 45 years old when the ALJ rendered his

decision (R. 18).  She is 5'5 and  and at the time of the hearing weighed 299 pounds.  She is

single and resides with her father in their family home.  Plaintiff completed high school and

received a BBA in 1994 (R. 457).  She is able to read and write, but does have difficulty writing

extensively because of some pain in her right arm.  She can do simple arithmetic.  Plaintiff has

had no other formal education or vocational training.  Her part-time work in a floral store that

accommodates her limitations, is her sole income.

      While Plaintiff alleges disability as of January 4, 2002 (R. 458), she has worked as a

sales associate approximately 20 hours a week at Thrifty Florist since October 16, 2003 (R. 459).

Typically, she works two to four days a week.  If she works over a five hour workday, she

experiences pain in her arms and legs with decreased control of her blood sugar.  Plaintiff stated

that this job is for rehabilitation and not "for employment" per se.   Her employer hired her with

"the understanding that it was really to help me, not because she actually needed me."  Plaintiff

indicated she does very little lifting.  She is on her feet throughout the day, but takes numerous

breaks (R. 460). Plaintiff has not worked in any other position since January 4, 2002.

From December 1996 to November 2001, Plaintiff worked as a full time credit

representative for AT&T, ACUS in Ann Arbor.[1]  In this capacity, she answered phones, solved

customer problems, reported technical problems and calculated phone rates and discounts (R.

461- 462).  The position required her to use a computer and various computer programs,

including, Windows, Excel and Outlook.  Plaintiff indicated that she was seated all day and did

not have to do any lifting.  She was laid off as a result of a workforce reduction.

In 1998, Plaintiff briefly worked part time as a counselor at Saline Head Injury.  She

worked in a paid position for six months and then a non-paid position for about three months.  In

1994, Plaintiff also worked at Walmart in a full time position for approximately one year (R.

462).  Plaintiff quit working due to heel spurs, which subsequently required a wheel chair for six

months (R.463).

Prior to working at Walmart, Plaintiff worked in the housewares section of a department

store.  She stocked shelves, did pricing, trained and supervised department staff, designed

modulars, and displays.  She was on her feet most of the day and often lifted up to fifty pounds,

sometimes more.

From 1985 to 1993, Plaintiff was employed full time as a house coordinator/team leader

---

[1]ACUS is a part of AT&T that works with college students.

3

by Rainbow Rehabilitation.  She supervised a staff of 20-25, scheduled transportation for clients, handled automobile and house maintenance and trained direct care staff.  Plaintiff was on her feet about half of each day.  She also had to lift clients.

Finally, Plaintiff worked part-time as a direct sales consultant for a tupperware company between 1977 and 1999, and as a part-time marketer from 1975 to 1998.   Plaintiff indicated that she earned less than $3,000 a year in the marketing job and was paid per job (R. 464 - 465).

Plaintiff stated that the primary physical problems that inhibit her ability to work are her thyroid disorder and uncontrolled diabetes.  She suffers from a hypothyroid condition, but indicated it is under better control now that she has changed her thyroid medication (R. 466).  On the other hand, Plaintiff's Type II diabetes has never been under good control.  She takes Glucaphage XR and three different types of insulin (R. 466 - 467).  Plaintiff reported that her diabetes caused daily problems and that she had problems with her blood sugar levels about once a week.  Her condition requires her to eat regularly at a set time and to eat consistently the same amount of food.  Yet, even following a close schedule, Plaintiff reported adverse reactions an average of once a week and high sugar levels about 50 percent of her week (R. 468 - 469).

Plaintiff had surgery for breast cancer in February and March 2002, after which she had chemotherapy and radiation therapy that ended October 31, 2002 (R. 469-470).  Plaintiff stated she has problems with both arms due to lymphedema, and that she had to wear a sleeve and a glove to control swelling when she engaged in physical activity.  In addition, she has carpal tunnel and tennis elbow in the right arm because she stressed it compensating for the left arm.  Her arm has improved with massages every morning and night.   Yet, if she stresses her arm out she gets hardness and redness.  She stated further that "there are times, though, that my breast get

4

very hard and into the ribs, so it's a constant manipulation.  I have to make sure I get the fluids out." She can no longer lift much weight (R. 471).

Plaintiff experiences bleeding in her eyes that periodically causes a "fuzziness" in her vision (R. 471-472).  This occurs mostly when she is watching television or viewing a computer monitor.  This problem irritates her eyes and make it difficult for her to read.

Plaintiff reported that her thyroid condition was a significant factor contributing to her repeated falling and injuries.  If she falls or gets on the floor to do something, she cannot easily get up.  Her physician informed her that decreased muscle use was part of the thyroid disorder. Going to physical therapy and an occupational therapist to strengthen her muscles has helped to some degree.  She also saw a physical medicine physician, Dr. Elin, who has ordered inserts and compression socks for her legs (R. 472 - 473).

Plaintiff reported receiving treatment from the following physicians.  Dr. Chavey is her family doctor.  Dr. Sandfield is her endocrinologist.  Dr. Chavey and Dr. Sandfield confer regarding her diabetes, thyroid and hormones.  Dr. Shatt is her oncologist.  Dr. Pierce is her radiologist and also follows her cancer treatment. All of her doctors are at the University of Michigan Hospitals with the exception of Dr. Sandfield (R. 474).

Plaintiff takes Insulin 730, Insulin regular, sliding scale, Insulin Lantus, Glucofage XR, as well as Zestril for high blood pressure, Armour for her thyroid condition, Zolexa for depression, Iron for anemia, Motrin for pain and Zoladex for the cancer treatment.  Plaintiff cannot take pain medication or muscle relaxers.

She has reactions to most medications (R. 475).  In particular, Plaintiff stated that the Glucofage XR causes gastro-intestinal problems.  She gets severe cramps, and then has severe

5

diarrhea.  Further, her Zoladex prescription "throws me into menopause."  Specifically, it causes

hot flashes also confuses her as to whether she is having an insulin reaction (R. 473).

Plaintiff is unable comfortably to lift anything over 15 or 20 pounds (R. 475-476).  She

can pick an item up and handle it briefly but she cannot carry it.  She has pain in her right elbow

and also has a numbing effect in her right hand, which causes her to release items

unintentionally.  Plaintiff indicated that when doing extensive lifting she has swelling in the side

of her breast down into her ribs and into her left arm.  She gave the example of holding a fifteen

pound baby and indicated that she had to put the baby down because she could feel the strain.

She is swollen for another whole day if she lifts too much.

Plaintiff can stand for no more than two hours, then she has to sit down.  She has suffered

damage from falling to her right foot and left ankle.  An MRI and x-rays indicated that she also

has arthritis.  Further, Plaintiff has a mild case of phlebitis with a superficial blood clot on the

outside, which can be painful (R. 477).  She has been able to increase her walking capacity to a

mile.  Anything over a mile causes her ankles, feet and the muscles on top of her knees to hurt.

She can sit for about two hours and then has to get up and stretch and move.  Plaintiff reported

suffering from edema in her legs when she sits too long.

Plaintiff indicated that bending at the waist sometimes causes her dizziness.  In addition,

she has difficulty reaching depending on which arm she uses and had problems stretching above

her head.  As she stated, "the left arm, I have problems reaching because there's a pull in the ribs

and the breast in the right arm now" (R. 478).   Further, she is unable to walk up stairs without

her legs giving out.  Therefore, she has to pull herself up the stairs. Her occupational therapist

has prescribed exercise, which has improved her movement.

6

Plaintiff indicated that she became depressed years ago when she was diagnosed with diabetes and  has been on an anti-depressant since she was diagnosed with cancer.  She said that she had seen mental health professionals in the past.  Her medication takes "the edge off," and her depression was better (R. 481).  She also has problems with self-esteem, memory and concentration, and regular crying spells(R. 483).  At the time of the hearing, Plaintiff was not seeing a mental health professional because she lacked adequate insurance coverage.

Plaintiff reported that she does not sleep well.  She must sleep on her back and often becomes very sore and wakes up.  She only gets about four hours of sleep.  Moreover, Plaintiff indicated that she has experienced a decrease in energy, and there are some days she does not get off the couch.

When she is not working, Plaintiff stated she spends the majority of her time reading. She travels to the library and has been studying meditation and stress relief.  In addition, she has taken a couple classes on relieving stress.  She watches a few of the news programs on television, but does not really enjoy television (R. 485)

Plaintiff testified that she visited with family and friends, but is unable to participate in gatherings as much as she previously (R. 484). She is capable of shopping for groceries and loading them into her car, carrying one bag at a time.  She was trying to do "raised beds and container gardening" and said she enjoyed her animals (R. 485).  Plaintiff drives unless she does not "feel safe." Since she has been on disability she has had to cancel her appointments an average of once a month because she does not feel it is safe to drive.  She was able to take care of her personal grooming, but sometimes had trouble if she had an insulin reaction that caused her right arm to become numb.  She said that she did not do dishes but that she cooked simple

meals and washed laundry, and alternated vacuuming and mopping every other day (R. 486, 491).  She took out the garbage if it was not too heavy.

      In response to the attorney's question, Plaintiff responded that she could lift 10-15 pounds occasionally, she was limited to about five pounds regularly, if she were to work eight hours a day, five days a week.  If she lifted more than that on a sustained basis she would stress the lymph nodes in her left hand side and it would cause swelling and excruciating pain (R. 487). Plaintiff further states, "when I have the swelling in between my ribs and then I have swelling in my breast, that's the worse because my breast becomes very hard, very uncomfortable to tolerate.  And then on my right side, my arm goes numb.  Sometimes it is even picking up a gallon of milk will make my arm go numb" (R. 488).  In addition, she stated that tests showed that she had tennis elbow with carpal tunnel syndrome in both arms.

## 2. *Medical Evidence*

      Plaintiff has a history of type II diabetes since approximately 1996.  Medical notes reflect continuing difficulties with diabetes control and obesity.  On January 29, 2002, William E. Chavey, M.D., Plaintiff's primary care physician, indicated in his treatment notes that Plaintiff 's glycemic control was poor and that she was resistant to modifying her regimen (R. 219-220). Similarly, on February 17, 2003, Dr. Chavey again discussed with Plaintiff the need for dietary control (R. 145-146).  Yet, claimant continued to gain weight, weighing 251.5 pounds on October 4, 2001 (R. 284-285), 248.9 pounds on April 8, 2002 (R. 197-198), 300 pounds on October 2, 2003 (R. 343-344) and 303 pounds on February 24, 2004 (R. 350-351).

      On February 19, 2002, Plaintiff underwent a wide excision lumpectomy of the left breast carcinoma (R. 214-215).  A re-excision on March 12, 2002, revealed no residual neoplasm (R.

209-210).  Yet, Plaintiff developed left breast cellulitis, for which she was placed on intravenous

antibiotics.  A May 6, 2002, examination, indicated that the cellutis had resolved, but there was

erythema due to inflammatory changes (R. 180-181).

On May 23, 2002, Plaintiff began chemotherapy with Adriamycin and Cytoxan (R. 173-

174).  Plaintiff experienced side effects from the treatment, including increased difficulty

controlling her diabetes, resulting in hyperglycemia.  She also has some nausea, which she

treated with anti-nausea medication.  On September 3, 2002, Plaintiff began adjuvant radiation

therapy, which was complicated by the development of lymphedema in her left breast (R. 158-

160).

In April 2003, state agency consultant B.D. Choi, M.D., completed a  physical residual

functional capacity assessment (R. 330-337).  Dr Choi believed  that Plaintiff could lift and/or

carry 10 pounds frequently and 20 pounds occasionally; could stand and/or walk about six hours

in an eight-hour workday and could sit for about six hours in an eight-hour workday.  Dr. Choi

also found that Plaintiff was limited in her upper extremities and in handling and fingering in

both hands.

On May 1, 2003,  Dr. Chavey provided his mental assessment of Plaintiff for the Social

Security Administration (R. 338-339).  He noted that Plaintiff was tired, fatigued, had sleep

difficulties, had anhedonia and had a feeling of hopelessness.  Dr. Chavey stated that some of the

depression may have been in response to her diagnosis of cancer, but she may also suffer from

depression previous to that diagnosis.  Further, he reported that Plaintiff was receiving some

counseling in addition to her medication.

On July 14, 2003, Plaintiff was evaluated at the University of Michigan Physical

Medicine and Rehabilitation Clinic (R. 301-303).  On physical examination, Plaintiff was in no acute distress and her head, neck and heart were normal.  Plaintiff had decreased but equal and palpable pedal pulses, with no evidence of edema or cyanosis.  Yet, there was mild edema underneath her left arm and her axilla.  Sensation was intact to pin and touch throughout. Cranial nerves II through XII were grossly intact.

On March 3, 2004, Plaintiff underwent electromyography and nerve conduction studies after reporting numbness in the medial right forearm and the entire right hand (R. 363-364).  The studies were abnormal, showing electrodiagnostic evidence of bilateral moderate median mononeuropathy at the wrist (carpal tunnel syndrome) characterized by demyelination without axon loss.

On April 29, 2004, Dr. Chavey completed a  physical residual functional capacity assessment (R. 370-375).  Dr. Chavey indicated that Plaintiff could lift and/or carry 10 pounds frequently and 20 pounds occasionally; could stand and/or walk for four to six hours in an eight-hour workday and had no limitations on sitting.  Further, Dr. Chavey stated Plaintiff will sometimes need to take one or two unscheduled breaks. He also noted that with prolonged sitting she need to elevate her legs to waist level approximately 30% of an 8 hour workday (R. 373). Dr. Chavey also stated his opinion that Plaintiff is rarely able to work greater than 15 hours a week noting that fatigue affects her eating pattern and thus her diabetes control (R. 370).  Yet, he concluded that Plaintiff was capable of low stress jobs and would likely only be absent from work about once a month.

On June 11, 2004, Maren Jensen, MSW, and the University of Michigan Hospital Cancer Center  provided her diagnosis of Plaintiff for the Plaintiff's Social Security claim (R. 381).  She

10

noted that social workers at the Cancer Center became involved with Plaintiff in January 2002, when she was diagnosed with breast cancer.   At that time, Plaintiff was struggling with acute stress, anxiety and depression.  Plaintiff subsequently sought out support through social work, the breast cancer support group and art therapy.  Ms. Jensen indicated that Plaintiff's low energy level and general feeling of malaise frustrated Plaintiff, thereby further contributing to her level of depression.

**3.**     *Vocational Evidence*

VE Leech described Plaintiff's past relevant full time positions by exertional and skill levels.  The position of credit representative at AT & T was sedentary, semi-skilled work.  Both the job at Rainbow Rehab and at Walmart were skilled work.  Further, VE Leech described Plaintiff's position as manager at Wal-Mart as  "heavy, and skilled" (R. 494).

ALJ Temin posed the following hypothetical to VE Leech: an individual of the same age, education, and work experience as the Plaintiff, with the following limitations: the individual can lift, carry, push, or pull up to 10 pounds occasionally and 5 frequently; she can stand and/or walk up to four hours in an eight hour work day and up to one hour at a time, and then must be able to sit for five minutes; individual can sit for eight hours and up to two hours at a time then must be able to change positions for about five minutes; individual can occasionally stoop, kneel, crouch and climb ramps and stairs; no crawling or climbing of ladders, ropes, or scaffolds; no work at unprotected heights or around hazardous machinery; no more than occasional over above shoulder work with the left upper extremity; not more than occasional firm, forceful gripping with the hands; and the individual is unable to remember periodic detailed instructions.

VE Leech stated that she did not believe that such an individual could perform Plaintiff's

11

past relevant work.  She further stated that she does not believe that any of Plaintiff's acquired skills from such work transfer to any other skilled or semi-skilled work that could be performed by an individual of that description.  In particular, the inability to remember detailed instructions would preclude semi-skilled and skilled work (R. 494-495).  Yet, VE Leech testified that such an individual could perform unskilled work, such as 1,500 surveillance system monitor jobs, 1,000 information clerk jobs, 5,000 general office worker jobs, 2,000 inspector jobs and 2,000 sorter positions.  All of these jobs are classified as sedentary.  If a worker needed to be absent for three days per month that would eliminate competitive employment but most employers could accommodate one, maybe two, days per month absence (R. 495-496).  Yet, she indicated that this is only her opinion, she does not have any data on this subject (R. 497 - 498).

VE Leech also reviewed Dr. Chavey's residual functional capacity, which indicates that Plaintiff is rarely able to work over 15 hours a week, and would need to elevate her legs to the level of her waist 30% of an 8 hour workday.  VE Leech indicated that the 15 hours a week restriction would preclude Plaintiff from full time work.  Further, VE Leech stated "there aren't very many jobs that can be done with your feet elevated to waist level." In addition, Dr. Chavey noted that Plaintiff would sometimes need to take one to two  unscheduled break of up to ten minutes during the course of an eight hour day. VE Leech felt that if this occurred at an unscheduled time, this would also "cause difficulties" (R. 498 - 499).

### 4.    *ALJ Temin's Decision*

ALJ Temin found that Plaintiff was not under a disability as defined in the Social Security Act at any time through the date of his decision (R. 25).  The ALJ found that Plaintiff met the disability insured status requirements of the Act at all times relevant to the decision and

had not engaged in substantial gainful activity at any material time (R. 24). ALJ Temin found

that there is no evidence that Plaintiff's physical or mental abilities to do basic work activities

are significantly limited by her diabetic retinopathy, calcaneal spurs of the left foot with mild

osteoarthritis, a hallux valgus deformity of the right foot with mild osteoarthritis. Therefore, he

did not find them to be "severe" within the meaning of the 20 CFR § 404.1520 (R. 19). Yet, he

found Plaintiff does suffer from some serve impairments, including obesity, diabetes mellitus,

bilateral carpal tunnel syndrome and depression. Yet, Plaintiff did not have an impairment or

combination of impairments that met or equaled the requirements of any impairment listed in

Appendix 1, Subpart P, Part 404 (the "Listing")(R. 19).

ALJ Temin concluded that Plaintiff's limitations preclude her from performing her past

relevant work and that she does not have any transferable skills that can be used for work within

her residual functional capacity (R. 25). He found Plaintiff had the following residual functional

capacity: a person who could lift/carry/push/pull up to 10 pounds occasionally and five pounds

frequently; could sit for up to eight hours total and two hours at a time during an eight-hour

workday; could stand or walk for up to a total of four hours and one hour at a time during an

eight-hour workday; could only occasionally stoop, kneel, crouch, and climb ramps and stairs;

could never crawl or climb ladders, ropes, and scaffolds; could only occasionally perform firm,

forceful gripping with both hands; could only occasionally work above shoulder level with her

left upper extremity; could never work at unprotected heights or around hazardous machinery;

and who is unable to remember or carry out detailed instructions. He concluded Plaintiff could

perform a significant range of sedentary jobs, including such work as identified by VE Leech (R.

25).

13

ALJ Temin found Plaintiff's allegations of pain and dysfunction were not fully corroborated by the objective medical evidence and were not consistent with Plaintiff's ordinary activities (R. 22). He noted that Plaintiff's mental impairments result in only mild restrictions of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. Moreover, there have been no episodes of decompensation. Further, ALJ Temin indicated there has been no residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate. Similarly, there is no current history of one or more years' inability to function outside a highly supportive living arrangement.

The ALJ noted that Dr Choi stated that Plaintiff could lift and/or carry 10 pounds frequently and 20 pounds occasionally; could stand and/or walk about six hours in an eight-hour workday and could sit for about six hours in an eight-hour workday (R. 20). Dr. Choi also found that Plaintiff was limited in her upper extremities and was limited in handling and fingering in both hands. Further, he reported that Dr. Chavey indicated that Plaintiff could lift and/or carry 10 pounds frequently and 20 pounds occasionally; could stand and/or walk for four to six hours in an eight-hour workday and had no limitations on sitting (R. 21).

He also noted that Dr. Chavey stated Plaintiff will sometimes need to take one or two unscheduled breaks and will need to elevate her legs with prolonged sitting. Indeed, ALJ Temin specifically remarked that his RFC assessment is "essentially consistent" with that of Dr. Chavey, but is more favorable to Plaintiff in that it allows her to perform sedentary work (R. 22). The ALJ stated further that Dr. Chavey's assessment would allow Plaintiff to perform a

14

significant range of light work while his assessment is based "on the record as a whole."   Yet,

he apparently did not accept Dr Chavey's opinion on the limited number of hours Plaintiff could

work because of her diabetes nor his statement concerning her need to elevate her legs 30 % of

he work day.

Finally, ALJ Temin indicated that Plaintiff had been less than optimally compliant with

her therapeutic regime.  He noted that several physicians have reported that Plaintiff had been

"resistant to modifying her regimen" and "can at times be noncompliant" (R. 20).  Indeed, Dr

Chavey, Plaintiff's primary care physician, noted that Plaintiff's "diabetic control was quite

poor" and urged her better dietary compliance.

## II.   ANALYSIS

## A.   Standards Of Review

In adopting federal court review of Social Security administrative decisions, Congress

limited the scope of review to a determination of whether the Commissioner's decision is

supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Sherrill v. Secretary of Health and

Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence has been defined as

"[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Commissioner's findings are

not subject to reversal merely because substantial evidence exists in the record to support a

different conclusion.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v.

Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984).

If the Commissioner seeks to rely on vocational expert testimony to carry their burden of

proving the existence of a substantial number of jobs that Plaintiff can perform, other than their past work, the testimony must be given in response to a hypothetical question that accurately describes Plaintiff in all significant, relevant respects.[2]   A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists that the Plaintiff can perform.

**B.**   **Factual Analysis**

Plaintiff raises three challenges to the Commissioner's decision: (1) ALJ Temin did not present the VE with an accurate hypothetical question or construct a proper RFC because he failed to sufficiently account for Plaintiff's "moderate" difficulties in maintaining concentration, persistence and pace; (2) ALJ Temin erred in forming an accurate RFC of Plaintiff's ability by failing to properly consider Plaintiff's obesity and; (3) ALJ Temin erred in forming an accurate residual functional capacity of Plaintiff's ability by failing to properly consider the opinions of Plaintiff's treating physician, Dr. Chavey

**1.**   ***Plaintiff's "moderate" limitations***

Plaintiff argues that this case should be remanded because the ALJ found that she had "moderate" limitations in concentration, persistence or pace (Dkt #5). She contends that the ALJ's RFC finding that she could not remember or carry out detailed instructions (R. 22)

---

[2] *See, e.g., Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (hypothetical question must accurately portray claimant's physical and mental impairments); *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 775-76 (6th Cir. 1987) (Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute substantial evidence only if the questions posed accurately portray the claimant's impairments."); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision the physical and mental impairments of the claimant."); *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

16

did not adequately accommodate her concentration limitations and that a "moderate" limitation

equates with an inability to concentrate fifty percent of the time.  Under the previously used

evaluative scale, deficiencies in concentration, and other areas, were rated on a five-level range

of frequency: never, seldom, often, frequent and constant.  C.F.R. 404.1520a(c)(4) has since

been amended to encompass a five-level scale based on severity rather than frequency of the

limitation.  The current scale rates severity as none, mild, moderate, marked and extreme.  Thus,

Plaintiff contends a finding of  "moderately limited" is equivalent to "often," and under *Bankston*

*v. Comm'r of Soc. Sec.*, 127 F. Supp. 2d 820 (E.D. Mich. 2000), such a limitation necessarily

requires a finding that a claimant is disabled.

In *Bankston*, the Court noted that it was reasonable to conclude under the regulations

"that a mental deficiency occurring 'often' may not be consistent with substantial gainful

employment."  *Id.* at 826.  The Court then determined that under the relevant portion of the

PRTF, "often" should logically be defined as fifty percent of the time.  *Id.* at 827.  There, the

finding that the claimant "often" had deficiencies of concentration, paired with the uncontested

findings of the treating physician that he was disabled, resulted in a judgment of disability and a

remand for award of benefits.

Yet, the Sixth Circuit has since held that an ALJ's failure to include in a hypothetical

question a PRTF finding that a claimant "often" has difficulty concentrating is not a basis for

remand when the hypothetical question adequately describes that claimant's limitations arising

from a mental impairment.  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  In *Smith*, the

ALJ marked on the PRTF that Smith "often" suffered deficiencies of concentration, persistence

or pace, but did not include that finding in the hypothetical question to the VE.  Smith, relying

17

on cases similar to *Bankston*, argued for a remand based on that omission.  The Sixth Circuit,

without citing *Bankston,* held that the hypothetical question asked by the ALJ was adequate.

The court noted that while the ALJ checked a single box for "often" in a 1-5 rating scale on the

PRTF,

> the ALJ went beyond this simple frequency assessment to develop a complete and
> accurate assessment of Smith's mental impairment . . . .  In particular, the ALJ
> relied on the testimony of four physicians who characterized Smith's
> concentration problems as minimal or negligible.  The ALJ then translated
> Smith's condition into the only concrete restrictions available to him–examining
> psychiatrist Schweid's recommended restrictions against quotas, complexity,
> stress, etc.– and duly incorporated them into his hypothetical to the vocational
> expert.

*Id.* at 379.[3]

The Court distinguished several unpublished district court cases similar to *Bankston*

because the ALJ's in those cases did not include in the hypothetical question the finding that the

claimant "often" had difficulty concentrating, nor did they otherwise account for such a

limitation.  *Id.*  Thus, when the ALJ makes a finding that the claimant "often" has problems with

concentration, but does not specifically include that limitation in the hypothetical question, the

question is whether the ALJ used adequate alternate concrete job restrictions in the hypothetical

question that suitably accommodated the worker's concentration limitations.

Here, ALJ Temin directly addressed and discounted many of Plaintiff's claims of

physiological impairments but he did accept that she had moderate difficulties in maintaining

_____

[3] It seemed significant to the court in *Smith* that the ALJ had noted there were four
physicians who characterized Smith's concentration problems as minimal or negligible.  In this
case there is less weighty counter-evidence concerning the degree of concentration limitations
than in *Smith*.

concentration, persistence, or pace.  While ALJ Temin presented the VE with a hypothetical that

included the inability to remember detailed instructions he did not specify the concentration

related problems.  While the inability to remember detailed instructions would preclude semi-

skilled and skilled work, VE Leech testified that such an individual could perform unskilled

work  such as surveillance system monitor, information clerk, general office worker, inspector

and sorter positions (R. 494-495).   Yet, VE Leech expressed no opinion on how moderate

problems with concentration, persistence or pace would affect these jobs.  Nor did ALJ Temin

use alternate methods of dealing with such limitations as did the ALJ in *Smith* by excluding jobs

involving against quotas, complexity, stress.  While the inability to remember or carry out

detailed instructions that ALJ Temin may eliminate jobs involve complexity, it does not

encompass concentration problems.  That seems to be a characteristic that would affect the

ability to undertake surveillance or do inspection and sorting, which latter jobs likely have some

quotas.  Based on this record, the hypothetical question here did not adequately accommodate

Plaintiff's moderate limitations of concentration, persistence or pace.[4]

--------

[4] ***Newton v. Chater***, 92 F.3d 688 (8th Cir. 1996), held that a reference merely to "simple
jobs" or "unskilled sedentary work" in a hypothetical question is insufficient to describe and
accommodate concentration deficiencies. .  In ***Ramirez v. Barnhart***, 372 F.3d 546, 554 (3d Cir.
2004), the ALJ had included the following limitations in the hypothetical: "no more than simple
one or two-step tasks; no travel outside the workplace; and a reasonable opportunity to receive
and make personal telephone calls", which the Court felt failed to "take into account the ALJ's
own observation (both in her opinion and in the PRTF) that [claimant] often suffered from
deficiencies in concentration, persistence, or pace."  ***McGuire v. Apfel***, 1999 WL 426035, at *15
(D. Ore. 1999), held that "simple work" was insufficient to describe claimant's deficiencies in
concentration, persistence or pace resulting in failure to complete tasks in a timely manner).
***Keyser v. Barnhart***, No. 03-60078 (E.D. Mich., Sept. 2, 2004) (unpublished), held that a
hypothetical question of "unskilled jobs with a low stress level alone" is not sufficient to
accommodate a claimant who, under the Commissioner's new regulations, has "moderate
limitations with respect to concentration, persistence or pace."  ***Walker v Barnhart***, 258
F.Supp.2d 293 (E.D. Mich. 2003), held that the ALJ's hypothetical question to the VE that the

### 2.    *Plaintiff's Obesity*

Taking into account Plaintiff's RFC, age, education, past work experience, and the testimony of VE Leech, ALJ Temin determined that Plaintiff was able to perform other work and was, therefore, not disabled.  Plaintiff argues that substantial evidence does not support this determination because ALJ Temin failed to adequately account for Plaintiff's obesity and depression (Dkt. #11).  Specifically, Plaintiff claims that their appears to be no restrictions in the RFC to accommodate her obesity, which Plaintiff argues also produces a "synergistic effect" exacerbating her depression.

ALJ Temin has adequately addressed Plaintiff's obesity in his RFC.   Indeed, ALJ Temin recognized that Plaintiff's obesity was a severe impairment and included a number of restrictions in his RFC to accommodate her, including limiting her work to a person who could lift/carry/push/pull up to 10 pounds occasionally and five pounds frequently; could sit for up to eight hours total and two hours at a time during an eight-hour workday; could stand or walk for up to a total of four hours and one hour at a time during an eight-hour workday; could only occasionally stoop, kneel, crouch, and climb ramps and stairs; could never crawl or climb ladders, ropes, and scaffolds; could only occasionally perform firm, forceful gripping with both hands; could only occasionally work above shoulder level with her left upper extremity; could never work at unprotected heights or around hazardous machinery.

Moreover, the ALJ noted several favorable assessments contained in her medical records.

---

claimant could perform only simple, unskilled work did not necessarily take into account the non-exertional limitations imposed by Plaintiff's depressive disorder.  ***Bielat v. Commissioner***, 267 F.Supp.2d 698 (E.D. Mich. 2003), held that generally, a reference to "unskilled, sedentary work" is not sufficient to describe deficiencies in concentration.

He reported that Dr Choi stated that Plaintiff could lift and/or carry 10 pounds frequently and 20 pounds occasionally; could stand and/or walk about six hours in an eight-hour workday and could sit for about six hours in an eight-hour workday (R. 20). Further, he stated that Dr. Chavey indicated that Plaintiff could lift and/or carry 10 pounds frequently and 20 pounds occasionally; could stand and/or walk for four to six hours in an eight-hour workday and had no limitations on sitting.

Finally, ALJ Temin indicated that Plaintiff had been less than optimally compliant with her therapeutic regime. He noted that several physicians have reported that Plaintiff had been "resistant to modifying her regimen" and "can at times be noncompliant" (R. 20). Indeed, Dr Chavey, Plaintiff's primary care physician, noted that Plaintiff's "diabetic control was quite poor" and urged her better dietary compliance. While ALJ Temin did not make formal findings that Plaintiff was not disabled because of a refusal to follow medical advice, her lack of compliance can be considered as to her credibility on whether the effects of her impairments are as serious as asserted. An individual with extreme limitations caused by obesity or diabetes would have an incentive to take care on complying with diet restrictions, but less severe limitations from these impairments would provide less of an incentive to do so. On this record, there is no basis to reject ALJ Temin's RFC or hypothetical question because of it not including greater restrictions related to obesity.

### 3.    *Proper Use of Treating Physicians' Opinions*

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. The case law in this circuit has stated that if adequately supported by objective findings, and if uncontradicted by other substantial medical evidence of record, a

treating physician's opinion of disability is binding on the Social Security Administration as a matter of law.[5]  The administrative decision could reject a properly supported treating physician's opinion of disability if the record contains "substantial evidence to the contrary."  *Hardaway v. Sec'y of HHS*, 823 F.2d 922, 927 (6th Cir. 1987).

Under the Social Security Administration regulations, the Commissioner will generally give more weight to the opinions of treating sources, but it sets preconditions for doing so.  20 C.F.R. §404.1527.  The regulation also limits the scope of the subject matters on which the Commissioner will give a treating source opinion greater weight.  The Commissioner will only be bound by a treating source opinion when it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record."  20 C.F.R. § 404.1527(d)  *See also*, S.S.R. 96-2p.

The regulation also limits the subjects upon which the Commissioner must defer to a treating source opinion to "the issue[s] of the nature and severity of your impairment[s]."  20 C.F.R. § 404.1527(d)(2).  Under 20 C.F.R. § 404.1527(e), the Commissioner will not defer or provide special significance to treating source opinions on certain subjects that are "reserved to the Secretary" which includes treating physician opinions on a claimant's disability under the Listing, on residual functional capacity or a general and conclusory statement of disability or inability to work.

Under 20 C.F.R. § 404.1513 (b)(6) a treating source "statement about what [a claimant]

---

[5]*See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference"); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) (same); *Bowie v. Harris*, 679 F.2d 654, 656 (6th Cir. 1982); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980).

22

can still do despite . . . impairment(s)" falls within the Commissioner's definition of "medical

opinion." under §404.1527(a)(2) because "what [ a claimant] can still do despite impairment(s)"

and "physical or mental restrictions" are medical judgments about the nature and severity of [a

claimant's] impairment(s)." The same logic seems to apply for the inverse, i.e. for what a

claimant cannot do in light of the impairment.

Here plaintiff's long time treating physician noted a need for Plaintiff to elevate her legs

to waist level up to 30% of a work day and limited the number of hours she could work in a

week. Yet, without giving any explanation for rejecting these limitations, ALJ Temin did not

include them in his hypothetical question.

The Sixth Circuit has noted the Commissioner's requirements for giving "good reasons"

for rejecting the opinion of a treating physician, and it was unforgiving when this was not done.

***Wilson v. Commissioner of Social Security****, 378 F.3d 541, 544-45 (6th Cir. 2004):*

> . . . . The regulation requires the agency to "give good reasons" for not giving
> weight to a treating physician in the context of a disability determination. 20
> C.F.R. § 404.1527(d)(2)(2004). This requirement is part of the "treating source"
> regulation adopted by the Social Security Administration in 1991. *See generally
> Schaal v. Apfel,* 134 F.3d 496, 503 (2d Cir.1998). Pursuant to this regulation, an
> ALJ must give more weight to opinions from treating sources since these sources
> are likely to be the medical professionals most able to provide a detailed,
> longitudinal picture of [the claimant's] medical impairment(s) and may bring a
> unique perspective to the medical evidence that cannot be obtained from the
> objective medical findings alone or from reports of individual examinations, such
> as consultative examinations or brief hospitalizations. 20 C.F.R. §
> 404.1527(d)(2). An ALJ must give the opinion of a treating source controlling
> weight if he finds the opinion 'well-supported by medically acceptable clinical
> and laboratory diagnostic techniques' and 'not inconsistent with the other
> substantial evidence in [the] case record.' *Id.* If the opinion of a treating source is
> not accorded controlling weight, an ALJ must apply certain factors – namely, the
> length of the treatment relationship and the frequency of examination, the nature
> and extent of the treatment relationship, supportability of the opinion, consistency
> of the opinion with the record as a whole, and the specialization of the treating
> source – in determining what weight to give the opinion. *Id.*

23

Importantly for this case, the regulation also contains a clear procedural requirement: 'We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.' *Id.* A Social Security Ruling explains that, pursuant to this provision, a decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996). 'The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases,' particularly in situations where a claimant knows that his physician has deemed him disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.' *Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart,* 362 F.3d 28, 32-33 (2d Cir. 2004).

It is an elemental principle of administrative law that agencies are bound to follow their own regulations. As the Ninth Circuit well summarized in applying this principle:

> 'The Supreme Court has long recognized that a federal agency is obliged to abide by the regulations it promulgates. *See Vitarelli v. Seaton,* 359 U.S. 535, 545, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *Service v. Dulles,* 354 U.S. 363, 372, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *Accardi v. Shaughnessy,* 347 U.S. 260, 267, 74 S.Ct. 499, 98 L.Ed. 681 (1954). An agency's failure to follow its own regulations "tends to cause unjust discrimination and deny adequate notice" and consequently may result in a violation of an individual's constitutional right to due process. Where a prescribed procedure is intended to protect the interests of a party before the agency, "even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed." *Vitarelli,* 359 U.S. at 547, 79 S.Ct. 968 (Frankfurter, J., concurring); *see also* Note, *Violations by Agencies of Their Own Regulations,* 87 Harv. L.Rev. 629, 630 (1974) (observing that agency violations of regulations promulgated to provide parties with procedural safeguards generally have been invalidated by courts).' *Sameena, Inc. v. United States Air Force*, 147 F.3d 1148, 1153 (9th Cir.1998) (parallel citations and circuit court citations omitted).

24

*Wilson* remanded the denial of Social Security benefits because of an ALJ's failure to give "good reasons" for rejecting a treating physician and it urged courts remand in such cases where the regulation is not followed even if there is substantial evidence that otherwise supports the ALJ's decision.  Section 404.1527(d) constitutes "an important procedural safeguard for claimants for disability benefits." ***Wilson***, *supra,* 378 F.3d at 547 (6th Cir. 2004).

Here, as in *Wilson,* the ALJ Temin did not give "good reasons" for discounting the opinion of  Dr. Chavey's April 29, 2004, residual functional capacity form, which indicated that Plaintiff is "rarely able to work greater than 15 hours a week."  Additionally, although ALJ Temin reported in his decision that Dr. Chavey indicated Plaintiff would need to elevate her legs for 30% of an eight hour workday to waist level he did not give "good reasons" for rejecting this testimony or not including it in the hypothetical question to VE Leech.

At the hearing, counsel specifically asked VE Leech about the restrictions listed in Dr. Chavey's assessment.  VE Leech indicated that a 15 hours a week restriction would preclude Plaintiff from full time work (R. 498-499).  Further, VE Leech stated "there aren't very many jobs that can be done with your feet elevated to waist level."

*Faucher v. Sec'y of HHS*, 17 F.3d 171, 176 (6th Cir. 1994), and *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994), held that after finding reversible error it is appropriate for the undersigned to remand for an award of benefits only when "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."  This entitlement is established if "the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Faucher* citing *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

25

In this case "all essential factual issues" have been *not* been resolved with regard to the impact of Plaintiff's physical limitations on her vocational capacity. Nor is the current case one where "proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." Accordingly, a remand for further administrative proceedings consistent with this Report and Recommendation is necessary.

**III.   RECOMMENDATION**

For the following reasons, It Is Recommended that this case be REMANDED for further administrative proceedings consistent with this Report and Recommendation. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: December 29, 2006          s/Steven D. Pepe_____
                                  United States Magistrate Judge

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 29, 2006, I electronically filed the foregoing paper with the Clerk  Court using the ECF system which will send electronic notification to the following:

Lewis M. Seward, Attorney at Law
James A. Brunson, AUSA

and I hereby certify that I have mailed via the United States Postal Service the paper to the following  non-ECF participants: <u>not applicable</u>

<u>s/Durene Worth</u><br>
Deputy Clerk<br>
U.S. District Court<br>
600 Church St.<br>
Flint, MI 48502<br>
810-341-7850